# EXHIBIT A

| | |
|---|---|
| District Court, City and County of Denver, Colorado<br>Court Address: 1437 Bannock Street<br>Denver, CO 80202<br><br>Plaintiff<br>CONNELL SOLERA LLC, A New Jersey limited liability company,<br><br>v.<br><br>Defendants<br>LUBRIZOL ADVANCED MATERIALS, INC., a Delaware corporation, CHARLOTTE PIPE AND FOUNDRY COMPANY, a North Carolina corporation, and CRESLINE PLASTIC PIPE CO., INC., an Indiana corporation.. | DATE FILED: November 11, 2020 7:32 PM<br>FILING ID: E141793D24CF8<br>CASE NUMBER: 2020CV33836<br><br><br><br>**COURT USE ONLY** |
| Attorney or Party Without Attorney (Name and Address):<br>Timothy W. Gordon, Reg No. 30544<br>J. Lee Gray, Reg No. 27306<br>Shawn A. Eady, Reg No. 38650<br>Holland & Hart LLP<br>555 17th Street, Suite 3200<br>Denver, CO 80202-3921<br>Phone Number: (303) 295-8000  E-mail: tgordon@hollandhart.com<br>FAX Number: (303) 295-8261          lgray@hollandhart.com | Case Number:<br><br><br><br>Division          Courtroom |
| **DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT** | |

1. **This cover sheet shall be filed with each pleading containing an initial claim for relief in every district court civil (CV) case, and shall be served on all parties along with the pleading.** It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. **Check one of the following:**

   ☐ This case is governed by C.R.C.P. 16.1 because:

   - The case is not a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding; *AND*

   - A monetary judgment over $100,000 is not sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

   ☒ This case is not governed by C.R.C.P. 16.1 because (check ALL boxes that apply):

   ☐ The case is a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding.

   ☒ A monetary judgment over $100,000 is sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

❑Another party has previously indicated in a Case Cover Sheet that the simplified procedure under C.R.C.P. 16.1 does not apply to the case.

*NOTE: In any case to which C.R.C.P. 16.1 does not apply, the parties may elect to use the simplified procedure by separately filing a Stipulation to be governed by the rule within 49 days of the at-issue date. See C.R.C.P. 16.1(e). In any case to which C.R.C.P. 16.1 applies, the parties may opt out of the rule by separately filing a Notice to Elect Exclusion (JDF 602) within 35 days of the at-issue date. See C.R.C.P. 16.1(d).*

❑A Stipulation or Notice with respect to C.R.C.P. 16.1 has been separately filed with the Court, indicating:

❑C.R.C.P. 16.1 applies to this case.

❑C.R.C.P. 16.1 does not apply to this case.

**3.**  ☒This party makes a **Jury Demand** at this time and pays the requisite fee. *See* C.R.C.P. 38.  (Checking this box is optional.)

Date: <u>November 11, 2020</u>                    <u>  s/ J. Lee Gray                              </u>
                                                                                  Signature of Party or Attorney for Party

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>Court Address:    1437 Bannock Street<br>                 Denver, CO  80202 | DATE FILED: November 11, 2020 7:32 PM<br>FILING ID: E141793D24CF8<br>CASE NUMBER: 2020CV33836 |
| **Plaintiff:**<br>CONNELL SOLERA LLC, A New Jersey limited liability company,<br><br>v.<br><br>**Defendants:**<br>LUBRIZOL ADVANCED MATERIALS, INC., a Delaware corporation, CHARLOTTE PIPE AND FOUNDRY COMPANY, a North Carolina corporation, and CRESLINE PLASTIC PIPE CO., INC., an Indiana corporation. | |
| | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiff Connell Solera LLC<br>Name:        Timothy W. Gordon, Reg No. 30544<br>               J. Lee Gray, Reg No. 27306<br>               Shawn A. Eady, Reg No. 38650<br>Address:     HOLLAND & HART LLP<br>               555 17th Street, Suite 3200<br>               Denver, CO 80202-3921<br>Phone No.:  303.295.8000<br>Fax No:     303.295.8261<br>E-Mail:      tgordon@hollandhart.com<br>              lgray@hollandhart.com<br>              saeady@hollandhart.com | Case No. CaseNumber<br><br>Div:          Ctrm: |
| **COMPLAINT** | |

For its Complaint against Defendants, Plaintiff Connell Solera LLC ("Solera"), by and through its undersigned counsel, alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Solera is a New Jersey limited liability company that owns and operates an apartment building in Denver, Colorado, which is the subject of this Complaint.

2.      Defendant Lubrizol Advanced Materials, Inc. ("Lubrizol") is a Delaware corporation with its principal place of business in Brecksville, Ohio. It is authorized and licensed to transact business in the State of Colorado.

3.      Defendant Charlotte Pipe and Foundry Company ("Charlotte") is a North Carolina corporation with its principal place of business in Charlotte, North Carolina. It is authorized and licensed to transact business in the State of Colorado.

4.       Defendant Cresline Plastic Pipe Co., Inc. is an Indiana corporation with its principal place of business is located in Evansville, Indiana. Defendant Cresline conducts business within the United States, including within the state of Colorado.

5.      This Court has jurisdiction over this action pursuant to Colo. Rev. Stat. §13-1-124 because Defendants have, at all relevant times, regularly transacted business in Colorado.

6.      Venue is proper pursuant to C.R.C.P. 98(c) because a substantial part of the events giving rise to this action occurred in the city and county of Denver.

## GENERAL ALLEGATIONS

7.      FlowGuard Gold® is the brand name of both a chlorinated polyvinyl chloride ("CPVC") chemical compound and/or resin as well as pipes and fittings that are extruded and molded from that compound/resin.

8.      FlowGuard Gold is designed, manufactured, tested, marketed and sold specifically for use in potable plumbing systems in buildings and homes throughout the United States.

9.      Upon information and belief, at all relevant times, Lubrizol designed, manufactured, and sold a CPVC chemical compound and/or resin called FlowGuard® Gold to Charlotte and Cresline, who extruded and molded that material into FlowGuard Gold pipes and fittings, which were marketed and sold for use in potable plumbing systems.

10.     Upon information and belief, Lubrizol also licensed its "FlowGuard Gold" trade name to companies that used its FlowGuard Gold compound/resin to make CPVC pipe and fittings, including Charlotte and Cresline.

11.     Upon information and belief, at all relevant times, FlowGuard Gold CPVC pipes and fittings manufactured by Charlotte and/or Cresline from resins and/or compounds supplied by Lubrizol were sold for installation in buildings and homes throughout the United States, including Plaintiff's apartment building in Denver, Colorado.

12.     According to Lubrizol, its FlowGuard Gold CPVC is "a tough, reliable plumbing material" that allows for "quick, easy installation" and is used in millions of homes and businesses around the world.[1]

---

[1] https://www.flowguardgold.com  (last visited Nov. 10, 2020).

13.     The current formulation of Lubrizol's FlowGuard Gold CPVC pipes and fittings was introduced in 1991 and is still sold today.[2]

14.     Solera is the owner of an eleven-story apartment building (the "Solera Apartments") located at 1956 Lawrence Street in Denver, Colorado.

15.     The Solera Apartments included a potable plumbing system made up, in significant part, of FlowGuard Gold pipes and fittings.

16.     From the time that it acquired the Solera Apartments from the developer in October of 2011, Solera utilized a professional management company, GREP Southwest, LLC, a Delaware limited liability company, dba "Greystar," to provide property management services for the building, including maintenance of the plumbing system.

17.     The FlowGuard Gold pipes and fittings in the Solera Apartments have begun to leak in numerous locations, causing damage to numerous apartments in the building.

18.     The FlowGuard Gold pipes and fittings in the Solera Apartments have become brittle, causing the pipes and/or fittings to crack, fracture, burst and otherwise leak on over 15 occasions throughout the Solera Apartments, causing significant water damage to tenant properties and requiring extensive repair and remediation expense.

19.     In addition, the FlowGuard Gold pipes and fittings used in the hot water supply lines have become darker in color throughout the Solera Apartments.

20.     By way of example, the following are photographs of a portion of the defective FlowGuard Gold products that have leaked and failed in the Solera Apartments:



---

[2] https://www.lubrizol.com/CPVC/About-Lubrizol-CPVC (last visited Nov. 10, 2020).





21.     The FlowGuard Gold pipes and fittings, as designed and manufactured, are defective. The material supplied by Lubrizol that Charlotte and/or Cresline used to manufacture the FlowGuard Gold pipes and fittings prematurely becomes brittle, causing cracks and leaks, eventually requiring removal and replacement of the entire plumbing system at substantial costs.

22.     FlowGuard Gold is marketed and sold for use in residential and commercial buildings. Yet, at all times, Defendants have concealed from and/or failed to disclose to end users the defective nature of FlowGuard Gold, which is prone to cause catastrophic damage to the properties in which it is installed and used.

23.     Defendants make numerous false representations about the durability and quality of FlowGuard Gold to the general public, property owners, and plumbing contractors that purchase and install plumbing systems. Upon information and belief, Defendants have made these, or similar, representations at all relevant times.

24.     For example, with respect to FlowGuard Gold in general, Lubrizol claims:

> FlowGuard Gold piping systems are backed by a nearly 60-year
> track record and provide long-term reliability and performance.
> The systems are durable and will not degrade, pit or scale, even
> when in contact with high chlorine levels.[3]

25.     As another example, concerning durability, Lubrizol claims that "FlowGuard Gold® CPVC solves many of the issues associated with alternative piping systems like PEX" and that "FlowGuard Gold® CPVC is 100% immune to corrosion or degradation caused by chlorinated water and will never fail due to contact with normal drinking water."[4] Lubrizol also states that "FlowGuard Gold pipe and fittings are designed for a 50-year service life"[5] and have "a life expectancy similar to copper."[6]

26.     Lubrizol's website also represents that FlowGuard meets certain industry standards, including, but not limited to: "ASTM D1784, Specification for Rigid Poly(Vinyl Chloride) Compounds and Chlorinated Poly(Vinyl Chloride) (CPVC) Compounds" and "ASTM D2846, Standard Specification for Chlorinated Poly(Vinyl Chloride) (CPVC) Plastic Hot- and Cold-Water Distribution Systems."[7]

27.     Concerning chlorine resistance, Lubrizol claims that "FlowGuard Gold pipes and fittings are naturally immune to chlorine degradation, due to the inclusion of chlorine in its molecular structure" and that "a FlowGuard Gold plumbing system will never fail under normal use due to chlorine levels."[8]

28.     Upon information and belief, Lubrizol has made these, or similar, representations concerning FlowGuard at all relevant times.

29.     Charlotte and Cresline also make various representations about the quality and durability of FlowGuard Gold. Upon information and belief, Defendants Charlotte and Cresline have made these, or similar, representations concerning the pipe and fittings at all relevant times.

30.     On the cover of Charlotte's brochure for FlowGuard Gold, Charlotte lists three attributes of FlowGuard Gold: "QUALITY", "RELIABILITY", and "PERFORMANCE."[9]

---

[3] https://www.flowguardgold.com/flowguard-gold-vs-pex-fact-sheet-download (last visited Nov. 10, 2020).
[4] https://www.flowguardgold.com/make-the-switch-to-flowguard-gold-cpvc (last visited Nov. 10, 2020).
[5] https://www.flowguardgold.com/blog/frequently-asked-questions-on-the-performance-of-cpvc-in-residentialplumbing (last visited Nov. 10, 2020).
[6] https://www.flowguardgold.com/blog/updating-aging-plumbing-systems (last visited Nov. 10, 2020).
[7] https://www.flowguardgold.com/specifications-submittals-and-codes (last visited Nov. 10, 2020).
[8] https://www.flowguardgold.com/pex-vs-cpvc (last visited Nov. 10, 2020).
[9] Available at: https://www.charlottepipe.com/Documents/Brochures/BR-FGG-IDEA.pdf (last visited Nov. 10, 2020).

31.     Charlotte also claims that "FlowGuard Gold Pipe & Fittings are Built for Strength," and has "[e]xcellent corrosion resistance to chlorine, chloramines and chlorine dioxide, which are used as disinfectants in municipal water systems." *Id*. at 3.

32.     Similarly, Cresline states in its Plastic Pipe Selection Guide that its FlowGuard Gold pipes and fittings have the following characteristics: "Rigid. Non-Corrosive. Lightweight. Excellent insulation properties. High water temperature resistance." and "Meets or Exceeds: ASTM D2846."[10]

33.     Defendants also represent that FlowGuard Gold is listed for and meets certain industry standards, including the following: ASTM D1784, ASTM D2846, ASTM F493, NSF Standard 14.

34.     Defendants' FlowGuard Gold does not conform to Defendants' representations and does not conform to applicable industry standards.

35.     In addition, Charlotte and Cresline sold and continue to sell FlowGuard Gold pipes and fittings with written "limited warranties," which are marketed and promoted and create an expectation and belief within the industry, and with ordinary consumers and property owners, that FlowGuard Gold will last as long as the warranty period or the expected life of the property in which it was  installed. For example:

    a.     Charlotte's written warranty warranted that the pipes and fittings would "be free from manufacturing defects and conform to currently applicable ASTM standards under normal use and service for as long as the single family residential dwelling is owned and occupied by the original owner."

    b.     Cresline's written lifetime warranty warrants that its FlowGuard Gold pipes and fittings "are free from defects in material and workmanship and conform to ASTM standards." The warranty provides relief for defective FlowGuard Gold "for as long as the original owner owns the property."

36.     As such, Plaintiff and other property owners could expect that the FlowGuard Gold Products would last the reasonable lifetime of the property; and, if not, that Charlotte or Cresline would repair or replace it under the warranty.

37.     The above-described representations and "limited warranties" explicitly extend to future performance of the FlowGuard Gold pipes and fittings.

38.     Upon information and belief, Charlotte was aware of the defects in FlowGuard Gold and the fact that its life span was in reality relatively short, and it dramatically decreased

---

[10] https://www.cresline.com/uploads/bulletinpa1.pdf (last visited Nov. 10, 2020).

the length of its "limited warranty," in or around 2008, from unlimited as to time to only ten years.

39. Charlotte's and Cresline's "limited warranties" contain unconscionable terms, including, among other things, that the remedy is limited to: a.) "replacement of, or credit for, the defective product" (Charlotte), and b.) "repair or replacement" of the defective FlowGuard Gold (Cresline). Therefore, even if Plaintiff's warranty claim was accepted and successfully processed by Charlotte and/or Cresline, Plaintiff would only get a free piece of equally defective FlowGuard Gold pipe or fitting or have the defective piece of FlowGuard Gold repaired, but Plaintiff would be responsible for, not only labor, but all other related repair and replacement costs for the affected property and finishes. Such severe limitations are inadequate to redress failure of the pipes and fittings or any resulting damage to the structure in which they are installed. Thus, the "limited warranties" fail of their essential purpose. The "limited warranties" also include various other unenforceable limitations.

40. Defendants knew, or should have known, before and while they were selling FlowGuard Gold specifically for use in potable plumbing systems that FlowGuard Gold was defective and not fit for that use.

41. At the time of its manufacture, distribution and sale, Defendants knew that FlowGuard Gold was unreasonably dangerous to the property of consumers such as Plaintiff who have FlowGuard Gold installed in its property.

42. Defendants are liable to Plaintiffs for the direct and incidental costs of removing and replacing all of the defective FlowGuard Gold installed in its property.

43. Defendants failed to properly design, manufacture and test FlowGuard Gold that reached end-users and was installed in properties, including Plaintiff's, without substantial change or alteration and without warning of defects in FlowGuard Gold or plumbing systems containing FlowGuard Gold.

44. For many years, Defendants have been well aware of the problems related to the embrittlement, cracking and shattering of FlowGuard Gold. They have received warranty claims and complaints from customers (like those of Plaintiff) that the pipes and fittings were and are defective and have not functioned as advertised and warranted.

45. After the products were sold and installed in the Solera Apartments, Defendants acknowledged on their websites that FlowGuard Gold is susceptible to expansion and contraction and repair problems (cracking and splintering).

46. Similarly, on-line postings and complaints from 2011 through 2019 include descriptions of the product, and how Defendants handled the complaints and inquiries, further put Defendants on notice concerning the defective nature of FlowGuard Gold.

47.     Defendants have knowingly and intentionally concealed that, notwithstanding statements on their websites, and in their brochures, advertisements and warranties, FlowGuard Gold suffers from embrittlement and routinely cracks and shatters during normal, foreseeable use in potable plumbing systems, resulting in plumbing leaks and attendant damage.

48.     Defendants have ignored customers' complaints and concerns and have failed to implement any changes to the FlowGuard Gold pipes and fittings or their warranty procedures to remedy the defects associated with their products.

49.     The FlowGuard Gold pipes and fittings will continue to deteriorate and degrade and, unless the plumbing system is replaced in its entirety, Plaintiff's potable plumbing system will continue to fail, resulting in damage to Plaintiff's property, including walls, ceilings, floors and other personal property.

50.     Solera has been advised by plumbing professionals that it must replace the FlowGuard Gold pipes and fittings wherever it currently exists throughout the 11-story building.

51.     Plaintiff has and will incur damages in the amount of the cost of the full replacement of the defective FlowGuard Gold pipes and fittings, other necessary repairs to the plumbing systems, related damages and repairs to the Solera Apartments resulting from the repair and replacement process, and consequential damages, including loss of use of and loss of rent from some or all of the property while the plumbing system is replaced.

## FIRST CLAIM FOR RELIEF
### (NEGLIGENCE)

52.     Plaintiff incorporates herein by reference each of the allegations contained in the paragraphs above.

53.     Defendants Charlotte and Cresline designed and manufactured FlowGuard Gold pipes and fittings and Lubrizol formulated the CPVC compounds and resins of which they were made. Collectively, the FlowGuard Gold compounds, resin, pipes and fittings are referred to as the "FlowGuard Gold Products."

54.     Defendants as a formulator of CPVC compounds and resins and designers and manufacturers of FlowGuard Gold pipes and fittings owed a duty to the consuming public to formulate, design and manufacture a product reasonably free of defect.

55.     Defendants had a duty to disclose to the consuming public, including builders, contractors and property owners like Plaintiff and its predecessors, the foreseeable risks associated with the use of FlowGuard Gold Products in plumbing systems, buildings and residences.

56.     Defendants were negligent and breached their duties to the consuming public, including Plaintiff, by designing, formulating and manufacturing FlowGuard Gold Products that,

under ordinary use in potable plumbing systems, is subject to deterioration, embrittlement, cracking, leakage, and is otherwise defective.

57.     Defendants were aware, or reasonably should have been aware, of the foreseeable risks associated with the use of FlowGuard Gold Products in plumbing systems, buildings and residences.

58.     Defendants were negligent in that they knew or in the exercise of reasonable care should have known that FlowGuard Gold Products under ordinary use in plumbing systems might be harmful or injurious to the consuming public, including the Plaintiff, but failed to use reasonable care to warn the consuming public, plumbers and contractors, including those who used FlowGuard Gold Products in the Solera Apartments, of the potentially harmful and injurious effects in the manner that a reasonable person would under the same or similar circumstances.

59.     Defendants failed to exercise reasonable care and give adequate warnings or instructions to the consuming public, plumbers and contractors, including those who used FlowGuard Gold Products in the Solera Apartments, about the reasonably foreseeable dangers that could result from using FlowGuard Gold Products under reasonably foreseeable conditions.

60.     Had Plaintiff been warned about the true nature of the quality of FlowGuard Gold Products, they would not have purchased the Solera Apartments in which FlowGuard Gold Products were installed, would have negotiated additional warranty coverage, would have negotiated a lower price to reflect the risk, or simply would have avoided the risk all together by purchasing a different property. Further, Plaintiff would have replaced the defective FlowGuard Gold Products sooner, preventing damage to numerous portions of the Solera Apartments.

61.     As a direct and proximate result of Defendants' negligent acts and/or omissions, Solera has incurred and will incur damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (STRICT LIABILITY – DESIGN DEFECT)

62.     Plaintiff incorporates herein by reference each of the allegations contained in the paragraphs above.

63.     Defendants Charlotte and/or Cresline designed and manufactured the FlowGuard Gold pipes and fittings installed in the Solera Apartments and Lubrizol formulated the CPVC compounds and resins of which the pipes and fittings were made.

64.     The design of the FlowGuard Gold pipes and fittings, including the formulation of the compounds and/or resin making up the pipes and fittings, was defective and, because of such design defects, the FlowGuard Gold Products were unreasonably dangerous to the consuming public, including the Plaintiff.

65.     The defects in the FlowGuard Gold Products creates a risk of harm to persons or property that would not ordinarily be expected, including the risk of significant property damage caused by leaking water and burst pipes, and health risks that could be caused by such water leaks.

66.     The FlowGuard Gold Products did not contain adequate warnings and thus were unreasonably dangerous to the consuming public, including the Plaintiff.

67.     The defect in Defendants' design of the FlowGuard Gold Products, including the lack of warnings, existed at the time the FlowGuard Gold Products were sold and/or when the products left Defendants' possession or control.

68.     The FlowGuard Gold pipe and fittings were expected to be and were installed in the Solera Apartments without substantial change in their condition from the time of their manufacture or sale.

69.     Plaintiff is among the class of persons expected to use, consume, or be affected by the defective FlowGuard Gold Products.

70.     Defendants are strictly liable for the injuries that the defective FlowGuard Gold Products have caused the Plaintiff.

71.     As a proximate result of the defective FlowGuard Gold Products, Plaintiff has incurred and will incur damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
#### (STRICT LIABILITY – MANUFACTURING DEFECT)

72.     Plaintiff incorporates herein by reference each of the allegations contained in the paragraphs above.

73.     Defendants Charlotte and/or Cresline designed and manufactured the FlowGuard Gold pipes and fittings installed in the Solera Apartments and Lubrizol formulated the CPVC compounds and resins of which the pipes and fittings were made.

74.     When the FlowGuard Gold Products left Defendants' control, they deviated in a material way from their formulation, design and/or performance standards. As a result, the FlowGuard Gold pipes and fittings installed at the Solera Apartments were unreasonably dangerous to the consuming public, including the Plaintiff.

75.     The FlowGuard Gold Products were defectively manufactured and posed a substantial likelihood of harm at the time they were sold and/or when the FlowGuard Gold Products left Defendants' respective possession or control.

76.     The FlowGuard Gold pipes and fittings, made up of the FlowGuard Gold compounds and/or resins, were expected to be and were installed in the Solera Apartments without substantial change in their condition from the time of their manufacture and sale.

77.     Defendants are strictly liable for the injuries that FlowGuard Gold Products have caused Plaintiff.

78.     As a proximate result of the defective FlowGuard Gold Products, Plaintiff has incurred and will incur damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (STRICT LIABILITY – FAILURE TO WARN)

79.     Plaintiff incorporates herein by reference each of the allegations contained in the paragraphs above.

80.     Defendants Charlotte and/or Cresline designed and manufactured the FlowGuard Gold pipes and fittings installed in the Solera Apartments and Lubrizol formulated the CPVC compounds and resins of which the pipes and fittings were made.

81.     When Plaintiff bought the Solera Apartments in which FlowGuard Gold Products were installed, it was not aware of the defective and destructive nature of the pipes and fittings. Defendants knew or had reason to know that consumers and property owners like Plaintiff would not realize the defective condition of the FlowGuard Gold pipes and fittings.

82.     Defendants did not provide, and FlowGuard Gold pipes and fittings did not contain, adequate warnings and as a result, the pipes and fittings were unreasonably dangerous to the consuming public, including the Plaintiff.

83.     The defects in FlowGuard Gold Products, including the lack of warnings, existed at the time the FlowGuard Gold Products were sold and/or when the FlowGuard Gold Products left Defendants' possession or control.

84.     FlowGuard Gold pipes and fittings, made up of the FlowGuard Gold compounds and/or resins, were expected to be and were installed in consumers' homes and other structures, including the Solera Apartments, without substantial change in their condition from the time of their manufacture or sale.

85.     Had Plaintiff been warned about of the true nature of the quality of FlowGuard Gold Products, they would not have purchased the Solera Apartments in which FlowGuard Gold Products were installed, would have negotiated additional warranty coverage, would have negotiated a lower price to reflect the risk, or simply would have avoided the risk all together by purchasing a different property. Further, Plaintiff would have replaced the defective FlowGuard Gold Products sooner, preventing damage to numerous portions of the Solera Apartments.

86.     Defendants are strictly liable for the damage that FlowGuard Gold Products and their lack of warnings have caused Plaintiff. Such harm would not have been suffered if Defendants had provided adequate warnings or instructions.

87.     The injuries caused to Plaintiff as a result of the defective FlowGuard Gold Products could and should have been reasonably foreseen by Defendants.

88.     As a proximate result of Defendants' failure to give adequate warnings or instructions regarding the reasonably foreseeable problems, Plaintiff has incurred and will incur damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (BREACH OF EXPRESS WARRANTY
### UNDER C.R.S. §§ 4-2-313; 4-2-318)

89.     Plaintiff incorporates herein by reference each of the allegations contained in the paragraphs above.

90.     The FlowGuard Gold pipes and fittings in the Solera Apartments were properly installed and maintained.

91.     The FlowGuard Gold pipes and fittings in the Solera Apartments have failed to operate as expressly warranted by the Defendants.

92.     The problems that Plaintiff has experienced with the FlowGuard Gold pipes and fittings and the plumbing system installed at the Solera Apartments are covered by Defendants' express warranties regarding the FlowGuard Gold Products.

93.     Defendants marketed and sold FlowGuard Gold Products into the stream of commerce with the intent that FlowGuard Gold pipes and fittings would be purchased by contractors, subcontractors, plumbers, and end users for installation in apartment buildings, homes and other structures, including the Solera Apartments owned and bought by Plaintiff.

94.     Defendants Charlotte and Cresline expressly warranted in writing that FlowGuard Gold is well-suited as plumbing material with a useful life matching the lifetime of the structure in which the FlowGuard Gold pipes and fittings are installed (or ten years for Charlotte FlowGuard Gold pipes and fittings after Charlotte dramatically decreased the length of its warranty).

95.     Charlotte and Cresline's express warranties explicitly extend to future performance of the FlowGuard Gold pipes and fittings and discovery of breaches of these warranties necessarily await the time of such performance.

96.     For purchasers of properties in which FlowGuard Gold was installed, including the Solera Apartments, these warranties became part of the basis of the bargain and Plaintiff relied upon the warranties.

97.     Pursuant to Charlotte's express written warranty, Charlotte is obligated to replace defective FlowGuard Gold pipes and fittings or provide monetary relief. Likewise, pursuant to Cresline's express written warranty, Cresline is obligated to repair or replace defective FlowGuard Gold pipes and fittings. In exchange for these duties and obligations, Charlotte and Cresline received payment of the purchase price for FlowGuard Gold pipes and fittings from or on behalf of property owners, including Plaintiff.

98.     Defendants created additional express warranties for FlowGuard Gold Products through their sales brochures, catalogs, websites and marketing materials, including the examples described above. These warranties have full force and effect, notwithstanding any purported limitations in the "limited warranties" from Charlotte and/or Cresline.

99.     Defendants made the express warranties to the ultimate consumers of the FlowGuard Gold pipes and fittings, including property owners such as Plaintiff.

100.    Defendants breached these additional express warranties by designing, manufacturing and selling FlowGuard Gold Products that were defective and did not conform to the representations made by Defendants. The FlowGuard Gold pipes and fittings embrittle, crack, shatter, otherwise deteriorate and leak. As a result, FlowGuard Gold Products are not suitable for use as a plumbing product.

101.    The limitations and exclusions in Charlotte's and Cresline's unjust one-sided "limited warranties" are unconscionable and unenforceable.

102.    Charlotte's and Cresline's purported "limited warranties" provide for replacement of the defective FlowGuard Gold pipes and fittings with equally defective parts.

103.    Charlotte's and Cresline's purported "limited warranties" fail of their essential purpose because they purportedly warrant that FlowGuard Gold will perform as promised for the lifetime of the structure in which the FlowGuard Gold pipes and fittings are installed (or ten years for Charlotte FlowGuard Gold pipe and fittings purchased after Charlotte dramatically decreased the length of its warranty), when in fact, FlowGuard Gold does not so last.

104.    Charlotte's purported "limited warranty" also fails of its essential purpose in that it limits recovery "to replacement of, or credit for, the defective product," as well as excludes the cost of labor and reimbursement for other damages. Charlotte's purported "limited warranty" further fails of its essential purpose in that the replacement FlowGuard Gold provided thereby is the same defective FlowGuard Gold.

105.    Cresline's purported "limited warranty" also fails of its essential purpose in that it limits recovery to "repair or replacement," as well as excludes the cost of labor and

reimbursement for other damages. Cresline's purported "limited warranty" further fails of its essential purpose in that the replacement FlowGuard Gold provided thereby is the same defective FlowGuard Gold.

106.    Such limitations are inadequate to redress failure of FlowGuard Gold or any resulting damage to the structure in which it is installed. As a result, the "limited warranties" do not provide a minimum adequate remedy.

107.    Because Charlotte's and Cresline's warranties fail of their essential purpose, Plaintiff is entitled to recover available damages.

108.    The Plaintiff has timely notified Defendants of their breach of express warranties after Plaintiff discovered the breach and demanded that they honor the warranties.

109.    As a direct and proximate result of Defendants' breaches of the express warranties, Plaintiff has been injured in an amount to be proven at trial and is entitled to recover therefor.

**SIXTH CLAIM FOR RELIEF**
**(BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**UNDER C.R.S. §§ 4-2-314; 4-2-318)**

110.    Plaintiff incorporates herein by reference each of the allegations contained in the paragraphs above.

111.    Defendants Charlotte and/or Cresline designed, manufactured, marketed, and sold the FlowGuard Gold pipes and fittings and Lubrizol formulated and sold the CPVC compounds and resins of which the pipes and fittings were made, knowing that the pipes and fittings would be installed in homes and other structures owned or bought by property owners, including the Plaintiff's Solera Apartments.

112.    At all relevant times, Defendants were merchants with respect to FlowGuard Gold Products and marketed, promoted, and sold FlowGuard Gold pipes and fittings to the consuming public.

113.    Defendants expected the consuming public, including property owners like Plaintiff and its predecessors, to install and use FlowGuard Gold in their homes and other structures and such use was reasonably foreseeable.

114.    Defendants warranted to property owners like Plaintiff and its predecessors that FlowGuard Gold Products were of a quality that would pass without objection in the trade and were at least fit for the ordinary purposes for which such goods were used, and in all other respects were of merchantable quality.

115.    Property owners, including Plaintiff and its predecessors, relied on that implied warranty.

116.    For the FlowGuard Gold Products to be merchantable, they had to last for many years, that is for a period at least equivalent to the expected life of a typical potable plumbing system.

117.    Defendants breached their implied warranties of merchantability because the FlowGuard Gold pipes and fittings, and/or the compounds or resins that they were made of, were not of merchantable quality and were defectively formulated, designed, and/or manufactured, as they embrittled, cracked, shattered, otherwise deteriorated and leaked, and were unfit for the ordinary purposes for which they were formulated, designed, manufactured, and used.

118.    Given where FlowGuard Gold is installed – within the walls, ceilings and/or floors of a home or other structure – the above-described limitation of remedies claimed by Charlotte and/or Cresline must fail of their essential purpose in that if the FlowGuard Gold fails, significant damage to property will occur and the replacement of the FlowGuard Gold and the repairs necessitated by the failure cannot be accomplished without considerable consequential cost and expense.

119.    Defendants have been repeatedly notified by multiple claimants and lawsuits of the defective nature of the FlowGuard Gold pipes and fittings and of their breaches of warranty. In addition, Defendants have been notified of their breach of implied warranty with respect to Plaintiff within a reasonable time of discovery.

120.    As a direct and proximate result of Defendants' breaches of the implied warranty of merchantability, Plaintiff has been damaged in an amount to be proven at trial.

## SEVENTHCLAIM FOR RELIEF
### (BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE UNDER C.R.S. §§ 4-2-314; 4-2-318)

121.    Plaintiff incorporates herein by reference each of the allegations contained in the paragraphs above.

122.    Defendants Charlotte and/or Cresline designed, manufactured, marketed, and sold the FlowGuard Gold pipes and fittings and Lubrizol formulated and sold the CPVC compounds and resins of which the pipes and fittings were made, knowing that the pipes and fittings would be installed in homes and other structures owned or bought by property owners, including the Solera Apartments owned by Plaintiff.

123.    Defendants impliedly warranted FlowGuard Gold Products to be fit for the particular purpose of use as the potable plumbing system in homes and buildings, including the Plaintiff's Solera Apartments, among other things.

124.    Property owners, including Plaintiff and its predecessors, relied on that implied warranty.

125.    For the FlowGuard Gold Products to be fit for this particular purpose, they had to last for many years, that is for a period at least equivalent to the expected life of a typical potable plumbing system.

126.    Defendants breached their implied warranties of fitness for a particular purpose because the FlowGuard Gold pipes and fittings, and/or the compounds or resins that they were made of, were defectively formulated, designed, and/or manufactured, as they embrittled, cracked, shattered, otherwise deteriorated and leaked, and were thus not fit for the particular purpose for which they were warranted.

127.    Given where FlowGuard Gold is installed – within the walls, ceilings and/or floors of a home or other structure – the above-described limitation of remedies claimed by Charlotte and/or Cresline must fail of their essential purpose in that if the FlowGuard Gold fails, significant damage to property will occur and the replacement of the FlowGuard Gold and the repairs necessitated by the failure cannot be accomplished without considerable consequential cost and expense.

128.    Defendants have been repeatedly notified by multiple claimants and lawsuits of the defective nature of the FlowGuard Gold pipes and fittings and of their breaches of warranty. In addition, Defendants have been notified of their breach of implied warranty with respect to Plaintiff within a reasonable time of discovery.

129.    As a direct and proximate result of Defendants' breaches of the implied warranty, Plaintiff has been damaged in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### (VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT)

130.    Plaintiffs incorporates herein by reference ach of the allegations contained in the paragraphs above.

131.    The broad legislative purpose of the Colorado Consumer Protection Act ("CCPA") is to provide prompt, economical, and readily available remedies against consumer fraud.

132.    Defendants have engaged in deceptive trade practices under C.R.S. §6-1-105(1)(b) because, in the course of their businesses, Defendants each knowingly or recklessly made false representations as to the source, sponsorship, approval, or certification of the FlowGuard Gold Products.

133.    Defendants have engaged in deceptive trade practices under C.R.S. §6-1-105(1)(c) because, in the course of their businesses, Defendants each knowingly or recklessly

made false representations as to affiliation, connection, or association with or certification by another with respect to the FlowGuard Gold Products.

134.    Defendants have engaged in deceptive trade practices under C.R.S. §6-1-105(1)(e) because, in the course of their businesses, Defendants each knowingly or recklessly made false representations as to the characteristics, ingredients, uses, and benefits of the FlowGuard Gold Products.

135.    Defendants have engaged in deceptive trade practices under C.R.S. §6-1-105(1)(g) by, in the course of their businesses, representing that the FlowGuard Gold Products were of a particular standard, quality or grade appropriate for use in potable plumbing systems when they knew, or should have known, that such representations were untrue.

136.    Defendants have engaged in deceptive trade practices under C.R.S. §6-1-105(1)(u) by, in the course of their businesses, failing to disclose material information concerning FlowGuard Gold Products. Defendants knew at the time it was selling FlowGuard Gold Products, including the pipes and fittings installed in the Solera Apartments, that their failure to disclose such material information would induce the consuming public, including property owners like Plaintiff and its predecessors, to purchase FlowGuard Gold Products; and such failure to disclose did induce consumers to purchase FlowGuard Gold Products for use in their plumbing systems.

137.    These actions relate to the marketing and sale of defective pipe and fittings used in many thousands of plumbing systems throughout Colorado and the United States significantly impacts the public as actual or potential consumers of Defendants' goods.

138.    As a result of Defendants' deceptive trade practices under Colo. Rev. Stat. §6-1-105, Plaintiffs have suffered actual damages in an amount to be proven at trial and are entitled to recover treble damages, costs and attorneys' fees against each Defendant for their deceptive trade practices.

WHEREFORE, Plaintiff prays that the Court enter judgment against Defendants, and each of them, and in favor of Plaintiff, and to award the following relief:

A.    An award of all actual, general, special, incidental, statutory, and consequential damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

B.    Incidental and consequential damages in an amount to be proven at trial, including, but not limited to expenses incurred in the attempts by the Plaintiff to fix their plumbing systems, repair the floors and walls damaged by the failures of these systems, and the loss of use of and loss of rents for of any portions of the Solera Apartments due to Defendants' breaches of warranty, negligence, design, formulation and manufacture of a defective and unreasonably dangerous products and failure to warn.

C.      Three times the amount of actual damages sustained by Plaintiff pursuant to Colo. Rev. Stat. §6-1-113(2)(a) for Defendants' violations of the CCPA;

D.      Attorneys' fees, costs and interest as provided for by law, including Colo. Rev. Stat. §6-1-113(2)(b); and

E.      Such other and further relief as the Court deems just and proper.

 PLAINTIFFS DEMAND A TRIAL TO JURY ON ALL ISSUES SO TRIABLE.

Dated November 11, 2020.

Respectfully submitted,

*s/ J. Lee Gray*

Timothy W. Gordon
J. Lee Gray
Shawn A. Eady
HOLLAND & HART LLP
**Attorneys for Plaintiff Connell Solera LLC**

**Plaintiff's Address:**
300 Connell Drive
Berkeley Heights, NJ  07922