IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-0336-WJM-SKC

CONNELL SOLERA, LLC,

    Plaintiff,

v.

LUBRIZOL ADVANCED MATERIALS, INC., and
CHARLOTTE PIPE & FOUNDRY, INC.,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT LUBRIZOL ADVANCED MATERIALS, INC.'S
EARLY MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant Lubrizol Advanced Materials, Inc.'s ("Lubrizol") Early Motion for Partial Summary Judgment ("Motion"). (ECF No. 36.) For the following reasons, the Motion is granted in part and denied in part.

### I. BACKGROUND[1]

**A.    Factual Background**

Connell Solera, LLC ("Solera") owns the building known as the Solera Apartments, located at 1256 Lawrence Street, Denver, Colorado. (ECF No. 36 at 3

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof. These facts are undisputed unless attributed to a party or source. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

¶ 1.)  The Solera Apartments were completed in 2010; however, Solera did not own the building at the time of its construction.  (*Id.* ¶¶ 2–3.)  As such, Solera played no role in the selection of materials for the Solera Apartments or the plumbing system within the Solera Apartments.  (*Id.* ¶ 4.)

Lubrizol is a chemical company that manufactures advanced polymers for use in various applications.  (*Id.* ¶ 5.)  Among other things, Lubrizol is the owner of the registered trademark FlowGuard, which is registered for use with respect to CPVC products. [2]  (*Id.* ¶ 6.)  Lubrizol manufacturers proprietary CPVC compounds that it sells to pipe manufacturers, including Charlotte Pipe & Foundry, Inc. ("Charlotte Pipe").  (*Id.* ¶ 7.)  Lubrizol does not sell finished pipes or fittings to end users.  (*Id.* ¶ 28.)

As of the time the Solera Apartments were completed, Lubrizol maintained a contractual relationship with Charlotte Pipe.  (*Id.* ¶ 12.)  Lubrizol and Charlotte Pipe signed a Product Supply Agreement which covers Lubrizol's sale of FlowGuard 3107 and FlowGuard Gold 88027 products for use by Charlotte Pipe for "manufacturing pipe and fittings for hot and cold water, industrial, commercial, and acid waste applications." (*Id.* ¶ 13.)  FlowGuard Gold 3107 is a "granular powder that is used in the manufacture of pipes."  (*Id.* ¶ 17.)  FlowGuard Gold 88027 is a "pellet that is used in the manufacture of fittings."  (*Id.* ¶ 18.)

The parties also signed a CPVC Processor License Agreement, in which Lubrizol licensed the trademark FlowGuard Gold to Charlotte Pipe for its use with its construction products in exchange for Charlotte Pipe's agreement that it would buy its

---

[2] CPVC is used to make pipes and fittings for the construction industry.  (*Id.* ¶ 10.)

2

requirements of CPVC compounds exclusively from Lubrizol, maintain certain quality standards, and adhere to certain branding specifications.  (*Id.* ¶ 14.)

The quality standards set forth in the CPVC Processor License Agreement require Charlotte Pipe's pipes and/or fittings to have: (1) been made solely of FlowGuard compounds; (2) meet all applicable "ASTM" standards; and (3) not be broken when impacted by a weight dropped from a certain height.  (*Id.* ¶ 15.)  Moreover, the contract permits Lubrizol the right to "inspect and test" the FlowGuard products and provides Lubrizol the right to terminate the parties' agreement under certain conditions if it determines that FlowGuard products are not being produced pursuant to the quality standards.  (ECF No. 37 at 34.)

The CPVC Processor License Agreement also provides that

> Lubrizol may, in its sole discretion, provide technical and engineering support for the development of applications for FlowGuard Products . . . .  This support may include consultation on prospective applications and technical support associated therewith and the preparation and publication of an engineering manual to assist [Charlotte Pipe] and prospective suppliers, installers and end-users in the proper use of FlowGuard Products . . . .

(*Id.* at 21.)  Lubrizol also "prepared and produced promotional literature, engineering manuals and advertisements relating to the FlowGuard Products" which Lubrizol agreed to provide in its discretion to Charlotte Pipe.  (*Id.* at 23.)

Lubrizol contends that to make finished pipes and/or fittings, its products must undergo an "intensive extrusion and/or injection molding process that significantly modifies the compounds."  (ECF No. 36 at 6 ¶ 22.)  According to Lubrizol, extrusion is a process "by which a compound is worked and heated to very high temperatures within an extruder until it is melted, and then pushed (in molten form) through a custom die to

3

make a pipe," whereas injection molding "involves a process by which a compound is worked and heated to very high temperatures within an injection molding machine until it is melted and injected (in molten form) into a customs plastics mold to make fittings." (*Id.* ¶¶ 23–25.) Lubrizol contends that it has no control over the design of its customers' molds or injection presses and that, as a raw materials manufacturer, it has no role in establishing, or control over, its customers' distribution networks or distribution policies. (*Id.* ¶¶ 26–27.) Solera disputes these facts, contending that discovery will show that "Lubrizol's resin compounds are simply heated and shaped into pipes and/or fittings with no material change to their properties/formulation" and that Lubrizol expressly controlled the nature and quality of the pipes and fittings. (ECF No. 56 ¶¶ 23–27.)

**B.     Procedural History**

Solera filed this action in the District Court for the City of County of Denver on November 11, 2020, and Defendants Lubrizol and Charlotte Pipe (jointly, "Defendants") removed this action on February 3, 2021. (ECF No. 1.)

In its Amended Complaint, Solera asserts the following claims against Defendants: (1) negligence ("Count 1") (*see* ECF No. 27 ¶¶ 53–62); (2) strict liability – design defect ("Count 2") (*see id.* ¶¶ 63–72); (3) strict liability – manufacturing defect ("Count 3") (*see id.* ¶¶ 73–79); (4) strict liability – failure to warn ("Count 4") (*see id.* ¶¶ 80–89); (5) breach of express warranty pursuant to Colorado Revised Statutes §§ 4-2-313 and 4-2-318 ("Count 5") (*see id.* ¶¶ 90–109); (6) breach of implied warranty of merchantability pursuant to Colorado Revised Statutes §§ 4-2-314 and 4-2-318 ("Count 6") (*see id.* ¶¶ 110–120); (7) breach of implied warranty of fitness for a particular purpose pursuant to Colorado Revised Statutes §§ 4-2-314 and 4-2-318 ("Count 7")

4

(*see id.* ¶¶ 121–129); and (8) a violation of the Colorado Consumer Protection Act ("CCPA"), Colorado Revised Statute §§ 6-1-105(1)(b), (c), (e), (g), and (u) ("Count 8") (*see id.* ¶¶ 130–138).  Defendants filed their respective answers on March 22, 2021. (ECF Nos. 30, 31.)

On April 28, 2021, Lubrizol filed the Motion.  (ECF No. 36.)  Solera responded on June 21, 2021 (ECF No. 56), and Lubrizol replied on July 6, 2021 (ECF No. 58).

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (internal quotation marks omitted). A party must support an assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"[C]onclusory and self-serving statements are insufficient to survive summary judgment." *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) (citing *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995)). Likewise, "general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment." *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 834 (10th Cir. 1986). Rather, "[t]o survive summary judgment, a nonmoving party must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof." *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1233 (10th Cir. 2016) (internal quotation marks omitted). Moreover, this Court is not obliged to "comb the record" to identify factual disputes or make a party's case for it. *Ford*, 222 F.3d at 777. Rather, "on a motion for summary judgment, *it is the responding party's burden* to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The*

*Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation marks omitted) (emphasis added).

## III. ANALYSIS

In the Motion, Lubrizol argues that: (1) it is entitled to summary judgment on Counts 2 through 7 because "Lubrizol's products never reached Solera in the form in which Lubrizol sold them"; (2) it is entitled to summary judgment on Counts 5 and 7 because Lubrizol did not issue an express warranty or a warranty for fitness for a particular purpose; and (3) it is entitled to summary judgment on Count 8 because Solera lacks standing to pursue the claim and because Solera cannot establish the elements of its CCPA claim.  (ECF No. 36.)  The Court considers each argument below.

### A. Whether Lubrizol's Products Reached Solera in the Form in which They Were Sold (Counts 2–7)

Lubrizol argues that it is entitled to summary judgment on Solera's claims for strict liability – design defect, strict liability – manufacturing defect, strict liability – failure to warn, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose because "Lubrizol's products never reached Solera in the form in which Lubrizol sold them."  (ECF No. 36 at 7.)  According to Lubrizol, "Solera's predecessor did not purchase chemical compounds, it purchased a building containing finished pipes and fittings.  It never received, possessed, or interacted with the powders or pellets that constitute Lubrizol's chemical compounds."  (*Id.* at 9 (internal citations omitted).)

In response, Solera argues that "it is undisputed that the Resin supplied by Lubrizol constitutes 100% of the pipes and fittings sold by Charlotte [Pipe]" and that "the FlowGuard Gold Resins produced by Lubrizol have only a single use: to be heated and

reshaped into pipes and fittings by Charlotte [Pipe], with no significant change prior to use and installation in Solera's building." (ECF No. 56 at 9.)

In *Hiigel v. General Motors Corp.*, 190 Colo. 57, 63 (Colo. 1975) (en banc), the Colorado Supreme Court adopted the doctrine of strict liability in tort as stated in Section 402A of the Restatement (Second) of Torts, which provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> > (a) the seller has exercised all possible care in the preparation and sale of his product, and
> >
> > (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Pursuant to this doctrine, "a manufacturer of component parts may be held strictly liable for injuries to a consumer caused by design defects in the component parts when they are expected to and do reach the consumer without substantial change in condition." *Union Supply Co. v. Pust*, 196 Colo. 162, 170 (Colo. 1978) (en banc). In reaching this conclusion, however, the Colorado Supreme Court emphasized that "the expected change in the parts must be substantial; small changes and minor processing will not relieve the component part manufacturer of liability." *Id.* at 172.

After carefully reviewing the parties' arguments, the Court concludes that it would be premature to rule on Lubrizol's request for summary judgment at this juncture. After all, notwithstanding Lubrizol's contention that its products must undergo an "intensive extrusion and/or injection molding process that significantly modifies the compounds" (*see* ECF No. 36 at 6 ¶ 22), Solera contends that discovery will show that "Lubrizol's resin compounds are simply heated and shaped into pipes and/or fittings with no material change to their properties/formulation" (*see* ECF No. 56 ¶¶ 23–27). In the Court's view, Solera should be given an opportunity to muster evidence regarding its contention that Lubrizol's products reach Solera without substantial change in the condition in which they are sold.

Accordingly, the Court denies this portion of the Motion.

**B.   Whether Lubrizol Has Issued an Express Warranty or Warranty for Fitness for a Particular Purpose**

    1.   <u>Express Warranty Claim (Claim 5)</u>

Pursuant to Colorado Revised Statutes § 4-2-313:

> (1) Express warranties by the seller are created as follows:
>
> > (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> >
> > (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> >
> > (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

9

> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

To prove a claim for breach of express warranty, a plaintiff must establish: (1) the existence of a warranty; (2) a breach of that warranty; (3) that the breach proximately caused damages; and (4) that defendant received timely notice of the breach. *Scott v. Honeywell Int'l Inc.*, 2015 WL 1517527, at *3 (D. Colo. Mar. 30, 2015).

In the Motion, Lubrizol argues that it "issued no written warranties in relation to its compounds or the Solera Apartments, and, importantly, Solera has identified no statements by Lubrizol aside from Lubrizol's alleged recommendation of properly manufactured and installed CPVC pipe . . . as a 'quality' and 'durable' product that is 'designed' against certain ASTM standards to last as long as copper pipes." (ECF No. 36 at 10.) According to Lubrizol, these statements are nothing more than a "rote commendation of a product that Lubrizol doesn't even manufacture." (*Id.*) For support, Lubrizol cites *Shaw v. General Motors Corp.*, 727 P.2d 387, 391 (Colo. App. 1986), in which the Colorado Court of Appeals concluded that statements that "Chevy's business is providing the right truck for your business" did not create an express warranty as it was merely the sellers' opinion or commendation of the goods.

In its response, Solera argues that "Lubrizol's own promotional and related materials, available to the general public and purchasing plumbers prior to the purchase and installation in Solera, made express and implied warranties regarding FlowGuard Gold pipes and fittings." (ECF No. 56 at 12.) For support, it argues that Lubrizol marketed FlowGuard Gold pipes and fittings as an "alternative to copper pipe" with "a

10

nearly 50-year track record" (ECF No. 56-1 at 2) and that Lubrizol's October 2007 Design and Installation Manual claims that FlowGuard Gold pipes and fittings have "50 years of successful service history" (ECF No. 56-2 at 3).

"The question of the existence of a warranty and whether that warranty was breached is ordinarily one for the trier of fact." *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1181 (D. Colo. 2002) (quoting *Stroh v. Am. Recreation & Mobile Home Corp. of Colo.*, 530 P.2d 989, 993 (Colo. App. 1975)); *see also* Colo. Rev. Stat. § 4-2-313 cmt. 3. Moreover, Colorado courts have recognized that representations in sales brochures and promises regarding a product's longevity can form the basis of express warranties under certain conditions. *See Loughridge*, 192 F. Supp. 2d at 1181–82 (concluding "Plaintiffs have provided sufficient evidence of specific oral promises made by Goodyear regarding the longevity of the Entran II hose which could be construed as explicit warranties of future performance"); *Anderson v. Heron Eng'g Co., Inc.*, 604 P.2d 674, 676 (Colo. 1979) (ruling trial court should give express warranty jury instruction regarding a warranty that the chair lift was "safe," as stated in a sales brochure created by defendant in connection with chair lift sales).

Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the Court concludes there are genuine issues of material fact as to whether Lubrizol's statements constitute an express warranty. Accordingly, the Court denies this portion of the Motion.

    2.    <u>Breach of Implied Warranty of Fitness for Particular Purpose (Claim 7)</u>

An implied warranty of fitness for a particular purpose arises "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods

are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 208 (Colo. 1984) (en banc) (quoting Colo. Rev. Stat. § 4-2-315).

As noted in comment 2 to section 4-2-315:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

To establish an implied warranty of fitness for a particular purpose, a plaintiff must show: (a) the product was to be used by the buyer for a "particular purpose" different from its ordinary purpose; (b) the seller knew of the buyer's "particular purpose;" (c) the seller knew that the buyer was relying on the seller's skill to provide a product that would satisfy the "particular purpose"; and (d) the buyer in fact relied on that skill. *Fiberglass Component Prod., Inc. v. Reichhold Chems., Inc.*, 983 F. Supp. 948, 955–56 (D. Colo. 1997).

Lubrizol argues that it "sold nothing but FlowGuard Gold chemical compounds, the ordinary purpose of which is to use them to make FlowGuard Gold pipes and fittings" and that "there is no allegation that Lubrizol's products were used for any purpose other than their ordinary purpose." (ECF No. 36 at 11–12.) As such, according to Lubrizol, it "made no warranty for fitness for a particular purpose and the evidence establishes that such a claim fails as a matter of law." (*Id.* at 12.)

In response, Solera argues that "Lubrizol was well aware of the particular—indeed, the only—use of its Resin," that Lubrizol "ignores the numerous express representations that Lubrizol made regarding both its Resins and the pipes and fittings made from the Resins," and that "a warranty of particular fitness for particular purpose is implied by law from the [*sic*] Lubrizol's representations and Solera need only establish that the product was not fit for that use." (ECF No. 56 at 13.)

The Court concludes that Solera has not presented any evidence that it intended to use Lubrizol's product for a particular purpose, *i.e.*, a purpose *other than* its ordinary purpose. *See Fiberglass Component Prod., Inc.*, 983 F. Supp. at 955–56 (recognizing that a particular purpose "differs from the ordinary purpose for which the goods are used"); § 4-2-315, cmt. 2; *Palmer*, 684 P.2d at 209. To the contrary, it appears that the FlowGuard Gold compounds at issue in the Motion were used for their ordinary purpose of making pipes. Indeed, Solera concedes that there is only one use for Lubrizol's products. (ECF No. 56 at 13 ("Lubrizol was well aware of the particular—*indeed, the only*—use of its Resin: to be shaped into pipe and fittings for potable plumbing systems." (emphasis added).)

Accordingly, the Court concludes that there is no genuine dispute as to any material fact regarding Solera's breach of implied warranty of fitness for particular purpose claim and grants this portion of the Motion.

## C.     Whether Solera has Established a CCPA Claim (Count 8)

In its First Amended Complaint, Solera contends that Lubrizol engaged in deceptive trade practices under the CCPA, specifically Colorado Revised Statutes § 6-

13

1-105(b), (c), (e), (g), and (u), by making false representations and failing to disclose material information regarding FlowGuard Gold Products.³  (ECF No. 27 ¶¶ 130–38.)

The Colorado legislature enacted the CCPA "to regulate commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public.  The CCPA deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical,

---

³ Under Colorado Revised Statute § 6-1-105 (1), a person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:

> . . .
>
> (b) Either knowingly or recklessly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property;
>
> (c) Either knowingly or recklessly makes a false representation as to affiliation, connection, or association with or certification by another;
>
> . . .
>
> (e) Either knowingly or recklessly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;
>
> . . .
>
> (g) Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another;
>
> . . .
>
> (u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

and readily available remedies against consumer fraud." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003) (en banc) (internal citations and quotation marks omitted). The elements of a private CCPA cause of action are:

>	(1) that the defendant engaged in an unfair or deceptive trade practice;
>
>	(2) that the challenged [unfair or deceptive] practice occurred in the course of defendant's business, vocation, or occupation;
>
>	(3) that [the challenged unfair or deceptive practice] significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
>
>	(4) that the plaintiff suffered injury in fact to a legally protected interest; and
>
>	(5) that the challenged practice caused the plaintiff's injury.

*Id.* at 146–47.

Lubrizol argues that Solera cannot prove the elements of a CCPA claim under any theory. (ECF No. 36 at 12.) With regard to Colorado Revised Statutes §§ 6-1-105(b), (c), (e), (g)—which require misrepresentations or false statements—Lubrizol argues that "Solera alleges only vague statements that Lubrizol has allegedly made related to quality, durability, longevity, and the track record of pipes made using its powder and pellet compounds, none of which qualify as false representations." (ECF No. 36 at 13.) It further contends that its statements are "general[,] non-quantifiable statements about the quality and durability of CPVC pipes" which cannot form the basis of a deceptive trade practice claim under the CCPA. (*Id.* at 13–14.)

In response, Solera points to a variety of statements contained in Lubrizol's materials "regarding the characteristics and attributes of the FlowGuard Gold pipe and

15

fittings . . . [that] are critical to plumbers and engineers making purchasing related to potable plumbing systems" and states that "[t]o the extent that Lubrizol asserts that [these] representations are true, there are at least triable issues of material fact regarding whether it engaged in deceptive trade practices."  (ECF No. 56 at 14–15.)

Because Lubrizol has argued that there is a lack of evidence regarding the CCPA claim, it is now Solera's burden in responding to a motion for summary judgment to "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671.  Critically, however, Solera does not point to any evidence in the record demonstrating that these statements were false or misleading—nor evidence that Lubrizol made these statements knowingly or recklessly—and the Court declines to conduct its own search of the record for evidence in Solera's favor.[4]  For example, Solera does not cite any evidence in either its "Response to Movant's Material Facts" or its own "Statement of Additional Material Facts" suggesting that Lubrizol's statements were *false or misleading*, such as evidence that CPVC pipe made from Lubrizol's products have deteriorated or degraded, or regarding customer complaints about Lubrizol's products.  (*See* ECF No. 56 at 2–8.)  *See Cross*, 390 F.3d at 1290 (recognizing that on a motion for summary judgment, "it is the responding party's

---

[4] The Court also cannot—and will not—rely on counsel's conclusory references regarding "Lubrizol's deceptive trade practices" to support Solera's CCPA claim.  After all, "the argument of counsel is not evidence, and cannot provide a proper basis to deny summary judgment."  *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009) (citing *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1198 n. 6 (10th Cir. 2008) (stating that, "[t]o avoid summary judgment, a party must produce specific facts showing that there remains a genuine issue for trial" and that "mere conjecture" is insufficient)).

burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record." (quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978)); *see also Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him."); *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record."). Accordingly, the Court finds that there is no genuine dispute of material fact as to Solera's CCPA claim to the extent it is brought under § 6-1-105(b), (c), (e), or (g).

Moreover, Lubrizol argues that Solera has failed to establish evidence of a violation of § 6-1-105(u) because Solera "alleges no information known by Lubrizol prior to the time it sold the compounds, instead only vaguely alleging that Lubrizol acquired knowledge of potential defects through blog posts that were made after 2011, at least one year after the Solera Apartments were completed." (ECF No. 36 at 14.) Because Solera does not respond to this argument (*see* ECF No. 56 at 14–15), the Court finds that Solera has conceded the point.

Accordingly, the Court grants the Motion as to the CCPA claim.[5]

---

[5] Because the Court grants summary judgment as to Solera's CCPA claim, the Court need not address Lubrizol's arguments regarding standing, causation, or the sufficiency of Solera's pleadings. (*See* ECF No. 36 at 12–15.)

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant Lubrizol Advanced Materials, Inc.'s Early Motion for Partial Summary Judgment (ECF No. 36) is GRANTED IN PART and DENIED IN PART as follows:

    a. Defendant Lubrizol's Advanced Materials, Inc.'s Early Motion for Partial Summary Judgment is GRANTED as to Counts 7 and 8;

    b. Defendant Lubrizol's Advanced Materials, Inc.'s Early Motion for Partial Summary Judgment is DENIED in all other respects; and

2. At the conclusion of this action, Defendant Lubrizol Advanced Materials, Inc. will be entitled to judgment on Counts 7 and 8.

Dated this 3rd day of February, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge